23-5025. Counsel, please proceed when you're ready. May it please the Court, my Honorable Opponent, I'm Blaine Meyrie, appointing counsel for Robert Perry, the appellant in this case. This case boiled down to the credibility of two witnesses, Perry and L.A. L.A. was the linchpin of the prosecution case. Without her testimony, the prosecution could not obtain a conviction. And the prosecution emphasized this in rebuttal closing when it said, the only person that matters for you today is L.A. L.A. told you all you need to know. What about A.A.? A.A. is a pretty important witness. She is important as to the conversation that the jury requested that the court wouldn't regarding the conversation in the driveway. Her testimony, though, was fairly well impeached. And I think the key testimony is L.A. Without L.A., they don't get a conviction. A.A.'s not an eyewitness. She can't testify to what occurred or didn't occur. Only L.A. and corroboration. But without L.A. and L.A.'s testimony being believed, there is no conviction. L.A.'s important, too. But A.A., you say a conversation that was an admission by the defendant, right? Well, it was disputed that it was an admission. That was her testimony. Her testimony was that he shook his head up and down as to indicate yes. He said nothing. And he said in his testimony that all he did was drop his head because of what his wife was accusing him of. But L.A. was the linchpin. I don't think there's any way they get a conviction without her testimony. And it's not a case of overwhelming evidence like a lot of the other plain error cases. No physical evidence. No DNA. No injury evidence. No medical evidence. No eyewitnesses other than L.A. and Perry. So the case rose or fell on the credibility of L.A. and the credibility of Perry. And it's in this context that the closing argument statements matter. More important than the case where the evidence is close. This was a credibility case, which the prosecution recognized. I think the parties recognized. So first, I'd like to address why the comments were improper. The first prong of the plain error for prosecutorial misconduct test. And then turn to why it's reversible plain error. Kids don't make this up. That was the theme of the prosecution closing. Kids don't make this up. They said it in opening part of the argument. Kids don't make this up, folks. Most ages don't. Kids don't make that up. Counsel, on that statement, though, it kind of differs from what we often see in terms of a prosecutor maybe personally vouching for the credibility of the witness in that the prosecutor wasn't arguing that kids don't make up accusations themselves, but was very specific to very graphic evidence and details that the argument is, of course, that a person of a child of that age wouldn't know about unless it happened. And it was responsive to arguments made by Perry's counsel, as I recall. So isn't this different than the normal or more commonly found vouching arguments that we see a prosecutor make? Well, the problem is, I will agree that they do reference the trial evidence, but when it's first discussed, it's in the initial argument. It's not in response to any defendant closing argument. But kids don't make this up. They don't. No one should know what it tastes like, for example. The problem isn't referring to that evidence. The problem is the use of the word kids. It takes a generalization, kids, children. No child would make this up. Believe the children. That's the message. But that's relevant, isn't it? That a kid, a young kid with less life experience isn't going to know to make up these detailed things that were said. It's relevant as to LA. Kid, singular. Kids, plural, suggests that the prosecution had evidence that the jury did not have, that no kids would make this up. And there isn't evidence to support that in the record, not even from their blind expert. I mean, isn't that something, though, that's reasonable for a juror to say, listen, I've known a lot of young kids that are LA's age, and none of them would have known this based on my life experience. I mean, isn't that a reasonable argument to make? It's a reasonable statement for a juror to make in the context of deliberation, because the juror is allowed to bring in that extra, that life experience outside of the record. The prosecution, in closing argument, is not. Is not allowed to bring in evidence that is outside the record. What if they just said, you've all been around kids before. They don't make this kind of stuff up. Use your life experience and just use your common sense when you're deciding whether LA should have known all these things. If I were defense counsel, I would have objected and said that's out, that we don't, we're dealing with one kid here, that is outside the record evidence. That's what I would have done. And I think that's the problem. They use this as a theme. Kids don't make this up. And obviously, these are highly charged inflammatory cases. Very, very brutal accusations and evidence. And it becomes inflammatory. It becomes vouching for LA's credibility. They could have said, how would LA know these things at her age? That was perfectly appropriate. And why shouldn't we read it exactly to say that? Because that's not what they said. In the context. Kids do not make this up. And of course, this is the key word there. And this refers back to the gory details of this crime, which we won't go into great detail here during the argument. But the sorts of things that kids that age don't know. That's just a true statement. Well, it's a true statement as to the evidence in the record as to LA. We don't have evidence about what other children know. And having handled other cases like this, I can tell you there are some children who have seen and heard horrible things at that age. So I think the problem is it creates this emotion and this inflammation, vouching for LA beyond what they needed to do fairly. And I think it was improper. I would like to also address referring to Mr. Perry as an abuser. The remark was in reference to a note that LA had written. The prosecution said without this note, LA was going to continue to go back to her abuser. That's no different than calling a murder defendant a killer. It's improper. That's the jury's role to determine if Perry committed these acts of sexual abuse or whether the murder defendant was the murderer. So giving you that it's in the abstract an improper trial tactic to use those terms. I mean, I look at our cases where we've called people in closing arguments. And I say we, the prosecutors have called people in closing arguments, a rapist, a schoolgirl rapist, a rapist, a liar, a loser, a sick man. And we've held in all those types of cases where there was evidence that the person committed the crime, that those were not prejudicial errors. I mean, how do you get around that line of authority? Well, in the plain error context, every case is different. And yes, it is a high bar and a high burden. But this is not a case of overwhelming evidence. If you look at the plain error cases cited in the briefs, most of them, you've got drug cases where they actually have drugs. They find drugs. You even have the Starks case where you had drugs. You had two cars driving together. And there this court did reverse for prosecutorial misconduct as plain error. Now, the context was a little strange there because of some things with the jury instructions. But it is not an insurmountable bar. And in this case where credibility mattered so much, the vouching for L.A. and calling Mr. Perry or implying that he was a liar and specifically wanted to focus on, to accept the defendant's version of events means everyone else lied under oath. Essentially accusing, saying, in order to believe the defense, everybody else who testified committed perjury. If you look at the record, the jury could believe Perry. They could believe all the other witnesses except A.A. and L.A. and enter into acquittal. So the jury is saying, do you think all these people committed perjury or do you think Mr. Perry lied? That's improper in the context of the case. And I think taking all these things together in the context of the case, which was not a case of overwhelming evidence, it was— Counsel, I'm sorry. Why was that improper? Isn't the prosecutor allowed and the jury instructions would support the government's argument that when the jury is considering the credibility of witnesses who testified before them, they can consider their motives and what they have to gain or lose from an outcome? And here, if you have a child saying this happened and the defendant testifies and says, no, it didn't, isn't it permissible for the government to say consider what their relative motivations are when they took the witness stand? Why is that improper? That's not improper. But what they said is everyone else lied under oath. That's misleading the jury about the relative credibilities. Like I said, you could believe Perry and you could believe most of the other witnesses in the case and enter into acquittal. So it's a misleading argument that essentially says somebody's lying. It's got to be him because otherwise all these other people, including these police officers, these school principals, and these experts lied under oath. That's simply not accurate under the record. Tell me about the closing argument from the defense here. Did the defense not attack the credibility of the prosecution witnesses in closing argument? Of course it did. Okay. So, I mean, how was the prosecution that far off base? I mean, you attacked, I assume you weren't trial counsel, but... I don't try cases. There you go. So the defense attacks the credibility of the prosecution witnesses. The prosecution attacks the credibility of the defense. And in this case, there's only one person who has benefits from lying here, this type of stuff. If you believe him, you have to think they're all lying under oath. I mean, that's sort of in line with criticizing the veracity of the other side's witnesses. In my view, it implies that they are calling Perry a liar. And it goes beyond that because it's essentially saying, in order to believe him, you have to believe all these other people committed perjury, which simply isn't the case. And I think it is a foul blow rather than a hard one. I don't recollect that, that sort of language. I recollect that the government said only one benefits from lying. But is it in the record? The government says, if you want to acquit, you have to believe everyone in the courtroom has lied? Yeah, it's at page 342 of Volume 1. To accept the defendant's version of events means that everyone else lied under oath. Good answer. Thank you. I'd like to reserve the balance of my time for rebuttal.  Good morning, Your Honors. May it please the Court, counsel. Improper remarks require reversal only if they so infect the trial with unfairness as to render the resulting conviction a violation of due process. That's the general standard this Court recited in Gregory in 2022. However, in this case, the standard is higher than that because these challenges to the government's closing argument were not raised below. And therefore, the standard is plain error. And in this context, whether the statements were plainly improper and whether if they were substantial rights, these remarks, even if improper, were not plainly so. And even if plainly improper, the defendant cannot meet his burden of showing they affected his substantial rights. Well, let me ask you a question. Do you think it's okay? I mean, just in general, should the prosecutor get up and say, Mr. So-and-so is a liar? As this Court has said more than once, it's not ideal and maybe not appropriate. But where the evidence supports that under the facts presented by the prosecution to accept those facts, you would have to disbelieve the defendant. Then it is not improper or at least not plainly so. You would probably agree then that if the prosecutor was making an argument, they shouldn't point over at the defendant and say, the abuser over there did this. I absolutely agree with that. However, neither of those things are what the prosecutor did here. They did not call Mr. Perry a liar. They said he had a motive to lie and that if he were telling the truth, the other witnesses were lying. No, I understand. What I'm getting at is there are a bunch of things that were said in this closing argument that press the limits of propriety. And if there were just one, you'd probably have an easy case. But there are several. And at what point do these, you know, arguably improper statements put together have an effect on the fairness of the proceeding? So I would disagree that a lot of these statements were close to the line. Do you think it's okay to say that you want them to do justice? I think just this court has repeatedly held under these circumstances that even if improper and under even more serious circumstances, justice requires the death penalty. But there is no justice unless under far more serious circumstances, the court has held that those kinds of remarks, while not ideal, are not the kind of appeal to civic duty that would affect the defendant substantial. But you're talking about these in isolation. And we've not said, hey, it's a good idea to go out there and appeal to people's sense of civic qualification and do whatever they want. But in this case, that didn't happen, so it's okay. But we're not approving those kinds of statements. We're just saying they're not prejudicial in that context. And you're talking about cases where we're dealing with them in isolation. I think actually in several of those cases, multiple of these types of errors were raised. In Littlejohn and Thornburg, these are cases where there is some allegation of vouching, and there is some allegation of justice demands, or not those exact words, but that kind of argument, appeal to civic duty. But I think going back to the original point, this court has repeatedly recognized that when a closing argument ties these types of arguments to the evidence of the case, when it draws the conclusion, and as the prosecutor didn't do here, but draws the conclusion that a defendant is a violent and evil man based on the evidence of his violent and evil conduct, or that the prosecutor alleges that the defendant is a psychopath based on behavior and testimony about potentially psychopathic behavior, even those kinds of ridiculing, as this court has referred to it, descriptions of the defendant have been at least approved when they are tied to the evidence that the jury heard. In this case, abuser, A, the prosecutor didn't call him an abuser, but it was a fair characterization given all the evidence that Mr. Perry had abused L.A. That he had a motive to lie was precisely the kind of thing that this court has held is within the proper scope of closing argument. That justice demands the word guilty followed the prosecutor's statement that all the evidence in this case leads up to one word, and that evidence is what demands a guilty verdict. That's precisely what a prosecutor would be able to properly argue in closing argument. Counsel, can I ask you about the way the appellant has posited this case overall to say that really L.A.'s credibility is all that matters, that the case really it's a decision the jury had to make between whether they believe Perry or believed L.A. Do you agree with that characterization of the case overall? Despite what my colleague may have said in closing argument, no. And in particular, and I think as I heard counsel raise it, that his characterization is that they would have had to believe L.A.'s testimony alone. L.A.'s testimony was not the only part of L.A.'s story that the jury heard. They heard that she had been consistently describing what had happened to her over a course of four years. And they heard it from numerous people that she had told it to, starting at the age of seven, from her teacher, Brandy Roberts, from the DHS worker, Marty Widows, from the forensic nurse examiner, Lynn Galloway. They also saw the pictures L.A. contemporaneously drew of her abuse and the words she used, the seven-year-old spellings of what happened to her and what that her father, who she considered her father, let her suck on his privates and rewarded her with candy and gum. That she drew a picture that no seven-year-old who had not been exposed to unusual things would have been able to draw of her father putting his penis into her mouth. These are not, and that I think goes to what to me is the most troubling comment that the prosecutor made in this closing argument was kids don't make this up. But for two reasons, I don't think that this court should be concerned about that. I don't think it was plainly improper for two reasons. First, what maybe a more artful way of making that statement would have been kids this age don't have the knowledge to make these very specific types of allegations up. That might have been more correct, but it would have been less effective. And as Gregory recognizes, we can use forceful language. And as this court has repeatedly held, prosecutors are given reasonable latitude in closing argument. And the fact that they chose to say this in a shorter version, but then present the evidence that supported that theory of the case. A seven-year-old would not have known the types of things that L.A. described. And if she did know those things through something other than what had happened to her, through media, through people telling her, she wouldn't have used the words she used, the words that Maria Rosales-Lambert testified. Kids, younger kids often don't have the experience or the language to express what happened to them in the words that we would use. And L.A.'s testimony confirmed that. Also, to the extent that they contend that no evidence supported this statement by the prosecutor, they ignore that testimony of Ms. Rosales-Lambert. But they also ignore the testimony of Brandy Roberts, who said, this is not a thing six-year-olds, that six-year-olds talk about. That testimony of both of those witnesses supported the kids don't make this up. And then the descriptions of the very specific things that L.A. had described to her teacher, to the DHS worker, to the nurse examiner that she had presented in her writing, those specific descriptions tied those statements to the testimony in a way that makes those statements by the prosecutor not plainly improper. But even if these statements were plainly improper and even taken together, the evidence in this case and the repeated instructions that the jury was given that statements by lawyers are not evidence and that they are to decide this case based solely on the evidence, the reminders that the prosecutors themselves gave them that the jury is to judge credibility and gave them instructions on how to judge the credibility of witnesses. The instructions also gave them advice on how to judge credibility of witnesses. And among those things was whether any of the witnesses had a reason to lie or tell the truth. These are precisely the kinds of things that a court, that a jury can consider in assessing that testimony. And those reasons combined with the strength of the evidence and specifically the testimony of A.A. on two parts, not just the conversation that she described in the car. And I think it's important to look back at that testimony. It's on page 1057 of the transcript. She doesn't just say she asked him something and he nodded. She says, I asked him if he had done anything to L.A. and he looked at me and said no. Then she says, I won't get the words perfect, but she says, but his heart was pounding in his chest. And so I thought I would ask him another way. And she asked, did L.A. do anything to you? And that is when she testified, not that he moved his head up and down. She said he nodded and got out of the car. Now, that's important in the context of appellant's argument about the questions from the jury that Perry argues make this a, or suggest that this was a closed case. They do not. Those questions in particular, questions two, three, and four, all pertain to count two of the indictment. Perry was charged with aggravated sexual abuse in count one based on the allegations, the repeated allegations that he put his penis in L.A.'s mouth. He was also charged with abusive sexual contact in count two and sexual contact involves the touching either through clothing or underneath clothing of the victim's, of a child's genitals. And the second question the jury asked was, does it, is it contact if defendant put his in the victim's, in L.A.'s mouth? And the court responded, no, because that's not the victim's genitals. The third question was, if we are unanimous as to count one, but not to count two, what happens? The fourth question was, can we see A.A.'s or hear A.A.'s testimony about the conversation in the car again? And that, if you look at it in the context of the other two questions and you think about the full exchange that A.A. described, A.A. first asked Mr. Perry, did you do anything to L.A.? And he said, no. But as to the second question, did she do anything to you? And he said, yes. So that testimony, the second admission went to count one. But the first question, did you do anything to L.A.? goes to L.A.'s testimony that a couple of times her father put his mouth on what she referred to her as her privates or her area. And that was the basis of the sexual contact charge in count two, of which there was much less evidence and which even in his conversation with A.A., Mr. Perry denied. And so to the extent that the jury had any question about the strength of the evidence in this case, it was as to count two. And that doesn't suggest that they had any question about L.A.'s veracity on the, on the description she had given all along of her father putting his, putting, letting her suck on his privates. And for those reasons, and given the strength of her evidence, the corroboration of all the other witnesses over the, and the consistency of her testimony over four years, and the fact that the jury had the opportunity to observe this witness, this 11-year-old now testify about what she had been trying to tell people for four years, suggests that even if the statements made by the prosecution were plainly improper, no reversal is warranted here. We would ask this court to affirm. Again, this was not a case of overwhelming evidence, and the jury clearly was looking at credibility issues during deliberations. First of all, they got an Allen instruction after six hours of deliberation, the second, about 930 the second morning. So this was not a jury that came to a snap judgment on overwhelming evidence. It simply isn't overwhelming in this case. With regard to forceful language, of course you can use forceful language, but you cannot use improper things. When it comes to using terms like abuser or calling someone a liar, that is problematic. And this court should not condone that, and frankly hasn't condoned that. I would also commend to you the Wend case out of the Colorado Supreme Court, which takes even a harsher line on use of the term lying. With regard to the rhetoric about kids don't make this up, and this is just another version of no kids this age would be able to use that, if you look at the blind expert, she said every child is different, every situation is different, and it depends on the child, not a universal. Thank you. Thank you counsel. Thank you both for your very helpful arguments. The case is submitted. Counsel are excused.